## 38611. TABB v. THE STATE.

SMITH, Justice.

Jean Tabb appeals from her August 1980 conviction of possession with intent to distribute marijuana, amphetamines, methaqualone, and amobarbital/secobarbital in violation of the Georgia Controlled Substances Act (Code Ann. § 79A-801 et seq.). Varying quantities of all four drugs were discovered during a search of appellant's car and person on September 22, 1978. In this direct appeal, appellant contends that she was punished multiply for the same offense, that the warrant authorizing the search was improperly issued, and that the trial court erred in various evidentiary rulings. For reasons that follow, we affirm.

1. Appellant enumerates as error the trial court's denial of her motion for a new trial and motion to modify sentence. She argues that the state may not, consistent with double jeopardy, impose multiple punishment for simultaneous possession of two or more drugs listed within the same schedule of the Controlled Substances Act.

Appellant was convicted of separate counts of possession with intent to distribute 128 amphetamine capsules, five methaqualone tablets, and one amobarbital/secobarbital pill. Each of these drugs is classified as a Schedule II controlled substance under Code Ann.§ 79A-807. Appellant was sentenced to ten years' imprisonment on each count, with the sentences to run concurrently. Tabb contends that application of this statutory scheme to her violates double

jeopardy[1] because it punishes her three times for a single act of possession of Schedule II drugs. We disagree.

In *Howard v. State,* 144 Ga. App. 208 (240 SE2d 908) (1977), the Court of Appeals addressed the precise question raised by appellant in this case and held that "[s]imultaneous possession of different proscribed [Schedule II] drugs may be multiply punished." Id. at 209. In deciding whether the statute as applied in *Howard* violates double jeopardy,[2] our touchstone is of course the intent of the General Assembly. "In making a judicial determination of whether multiple punishment is permissible, the question is: What did the legislature intend?" *Haynes v. State,* 249 Ga. 119, 123 (288 SE2d 185) (1982) (Marshall, Justice, dissenting). Our inquiry begins with the language of the statute itself. Generally, where the language used by the legislature is plain and unambiguous, judicial construction is unnecessary. *Board of Trustees v. Christy,* 246 Ga. 553, 554 (272 SE2d 288) (1980); *Gazan v. Heery,* 183 Ga. 30 (187 SE 371) (1936). But where, as here, the words of the statute are inherently ambiguous, our task is to "look diligently for the intent of the General Assembly." Code Ann. § 102-102 (9).

Here the General Assembly has stated that "possess[ion] with intent to distribute *any controlled substance"* is a crime, and that "[a]ny person who violates [this statute] with respect to a controlled substance in Schedule II . . . shall be guilty of a felony and shall be punished by imprisonment for not less than five years nor more than 30 years." Code Ann. § 79A-811 (b) and (f) (1981 Supp.). (Emphasis supplied.) The controversy in this case centers around the meaning of the phrase "any controlled substance." Webster's Seventh New Collegiate Dictionary (1971) defines "any" as follows: "(1) One or some indiscriminately of whatever kind; (2) One, some or all indiscriminately of whatever quantity; (3) Unmeasured or unlimited in amount, number, or extent." Thus "any controlled substance" as

---

[1] In her brief, appellant relies primarily on the Double Jeopardy Clause of the Fifth Amendment rather than on Georgia's statutory double jeopardy provisions, found at Code Ann. §§ 26-505 and 506. We choose to evaluate appellant's claim under state law, which provides broader protection than comparable federal law. See *State v. Estevez,* 232 Ga. 316, 317 (206 SE2d 475) (1974); Note, Double Jeopardy: An Illusive Expansion of a Constitutional Protection, 14 Ga. L. Rev. 761 (1980).

[2] We are concerned with the so-called "substantive" double jeopardy bar. This doctrine limits multiple punishment for a single criminal act. See Comment, *Twice in Jeopardy,* 75 Yale L. J. 262 (1965). We note that "[t]he double-jeopardy clause's limitation on multiple punishment is primarily, if not exclusively, a restriction on the power of the judiciary, rather than the legislature, to impose cumulative punishment for closely-related offenses." *Haynes v. State,* 249 Ga. 119, 123 (288 SE2d 185) (1982) (Marshall, Justice, dissenting).

used by the legislature in Code Ann. § 79A-811 could mean, alternatively, "one controlled substance," "some controlled substances," or "all controlled substances" which are listed in the Act.

In *Patterson v. Caldwell,* 229 Ga. 321 (191 SE2d 43) (1972), this court interpreted Code Ann. § 26-3911, the forged check statute, to mean that a defendant who simultaneously possessed five forged checks could be punished separately for possession of each check. The relevant language of that statute was similar to the language of § 79A-811. "Any person who shall have in his possession *any . . . forged . . . check,* with intention fraudulently to pass the same, shall be punished by imprisonment and labor in the penitentiary for not less than two years nor more than 10 years." (Emphasis supplied.) The court concluded that ". . . possession of each check, when accompanied by the requisite fraudulent intent, was a separate offense." Id. at 322.

In light of the decisions in *Patterson v. Caldwell* and *Howard v. State,* supra, we conclude that simultaneous possession of each of the controlled substances listed in Schedule II (Code Ann. § 79A-807) is a separate offense for which the legislature meant to impose punishment.

Appellant urges that illegal possession of several different Schedule II drugs should constitute one offense. We think that appellant's emphasis on the Act's breakdown of drugs into different schedules tends to obscure the broader purpose of the Act. In our view, the Controlled Substances Act "established a classification of controlled substances into different 'schedules' based upon the relative potential of each substance for abuse, the degree of physical or psychological dependence its use might engender and its acceptability for medical use in treatment . . . Drugs within a single schedule are considered to be approximately equal in dangerousness but, as a group, they are considered to be more dangerous than the drugs listed in some of the other schedules and less dangerous than the drugs listed in still different schedules. Thus, penalties reflecting these distinctive degrees of danger vary from schedule to schedule within the Act. Nevertheless, *each drug within a given schedule was placed there because it, individually, is dangerous and warranted control."* (Emphasis supplied.) State v. Collier, 567 SW2d 165, 167 (Tenn. Sup. Ct. 1978).

We note that our conclusion finds support in a number of states with legislation similar to our Controlled Substances Act. See People v. Mason, 276 Cal. App. 2d 386 (81 Cal. Rptr. 195) (1969); State v. Adams, 364 A2d 1237 (Del. Super. 1976); State v. Williams, 542 SW2d 3, 5 (Mo. Sup. Ct. 1976); State v. Collier, supra; Melby v. State, 70 Wis.

2d 368 (234 NW2d 634) (1975). Contra, People v. Manning, 374 NE2d 200 (Sup. Ct. Ill. 1978); State v. Butler, 112 N. J. Super. 305 (271 A2d 17) (1970).

Moreover, our construction of the Act is consistent with the rules for determining identity of offenses for double jeopardy purposes which are set out in Code Ann. § 26-505 (a), as interpreted by this court in *State v. Estevez*, 232 Ga. 316 (206 SE2d 475) (1974), and most recently in *Haynes v. State*, supra.[3] None of the three counts against the appellant was "included" within the others within § 26-505(a), since proof of each crime of possession with intent to distribute required introduction at trial of additional facts to support each separate count. Thus prosecution, conviction, and punishment for each count was proper under Code Ann. § 26-506 (a).

2. In her third enumeration, appellant contends that the trial court erroneously denied her motion to suppress evidence of illicit drug activity which was seized pursuant to a warrant issued on September 18, 1978, by Judge Rex Reeves. Appellant asserts that the search warrant was improperly issued (1) because Judge Reeves, a justice of peace, ·was not a neutral and detached magistrate as required by the Fourth Amendment of the U. S. Constitution and Art. I, Sec. II, Par. IV of the 1976 Georgia Constitution (Code Ann. § 2-204), and (2) because the warrant was not supported by probable cause. We find no error.

(a) Appellant argues that Judge Reeves is per se disqualified from issuing a search warrant in his capacity as ex officio justice of the peace because he also serves as county coroner. Appellant's position can be stated as follows: the office of coroner is within the executive branch of government; therefore, one holding that office cannot at the same time constitutionally perform the judicial function of issuing a search warrant.

This argument proceeds from a faulty premise. In Georgia, the office of coroner is primarily judicial, not executive, in character. The Court of Appeals considered this question in *Sanders v. State*,[4] 151 Ga. App. 590 (260 SE2d 504) (1979), and squarely held "that a coroner is not within the executive branch of government and is not disqualified per se . . . from issuing a search warrant." Id. at 591. We hold that no per se disqualification exists.

---

[3] Code Ann. § 26-505 (a) defines an included crime as one which "is established by proof of the same or less than all the facts . . . than is required to establish the commission of the crime charged."

[4] We note that the magistrate who issued the search warrant in the *Sanders* case was Judge Rex Reeves, the same justice of the peace whose actions are challenged in the present case.

Appellant next contends that Judge Reeves was not a neutral and detached magistrate as required by the Fourth and Fourteenth Amendments because of his personal association with police officers. In support of this position, appellant points out that Judge Reeves regularly visited the sheriff's office and county jail, and that he was formerly employed as a deputy sheriff.

The Fourth Amendment insures that the decision of whether to issue a search warrant is made by a neutral and detached judicial officer, not by one "engaged in the often competitive enterprise of ferreting out crime . . ." Johnson v. United States, 333 U. S. 10, 14 (68 SC 367, 92 LE 436) (1948). "Whatever else neutrality and detachment might entail, it is clear that they require severance and disengagement from activities of law enforcement." Shadwick v. City of Tampa, 407 U. S. 345, 350 (92 SC 2119, 32 LE2d 783) (1972). See also Baggett v. State, 132 Ga. App. 266 (208 SE2d 23) (1974).

The record shows that Judge Reeves had not served as deputy sheriff for approximately eight years at the time the search warrant in question was issued. Mere personal associations with police officers, without more, do not disqualify a magistrate from issuing a search warrant. See Sanders v. State, supra at 592. This case is different from Thomason v. State, 148 Ga. App. 513 (251 SE2d 598) (1978), where the officer who issued the warrant took part in the actual search and seizure of evidence. There is no evidence of such misconduct by Judge Reeves in this case.

Factual and credibility determinations made by a trial judge after a suppression hearing must be accepted by appellate courts unless clearly erroneous. Johnson v. State, 233 Ga. 58 (209 SE2d 629) (1974). The trial court's determination that the justice of the peace in this case acted as a neutral and detached magistrate was not clearly erroneous.

(b) Appellant contends that the information presented to Judge Reeves in affidavits and sworn oral testimony by law enforcement officers did not, taken together, add up to probable cause for issuance of a search warrant.[5] Essentially, she urges that the informers quoted by police were unreliable, that the affidavit did not alleged sufficient facts to show that a crime was committed, and that the information contained in the affidavit was stale.

---

[5] We have held that a magistrate may consider sworn oral testimony in addition to the contents of an affidavit when deciding whether there is probable cause to issue a search warrant. Simmons v. State, 233 Ga. 429 (211 SE2d 725) (1975).

Where probable cause for issuance of a search warrant is based primarily on an informer's tip, a two-prong test for reliability must be met. The affiant must (1) state the underlying circumstances showing the informer's reliability, and (2) state the underlying circumstances showing the source of the informer's information. Spinelli v. United States, 393 U. S. 410 (89 SC 584, 21 LE2d 637) (1969); Aguilar v. Texas, 378 U. S. 108 (84 SC 1509, 12 LE2d 723) (1964).

Police officer Charles Middleton's affidavit stated that he received his tip regarding appellant's activities from a "reliable informer." According to Middleton, this informer had no criminal record, was known personally to Middleton, and had supplied reliable information leading to nine drug-related arrests and one conviction in the past fourteen months. This "track record" was sufficient to establish the informer's reliability and to satisfy the first prong of the Aguilar-Spinelli test. See Bryan v. State, 137 Ga. App. 169 (223 SE2d 219) (1976).

To meet the second prong of the test, the affidavit must state "how the informer obtained the information, or . . . describe the accused's criminal activity in sufficient detail that the magistrate may know it is more than a 'casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation.' " Spinelli v. United States, supra, at 416. Here the informer described the appellant's frequent trips to Miami, stated that appellant "carried pills in her pocketbook and was selling pills to truckdrivers," and reported that she "sold Black Beauties or amphetamines for $3.00 each." In addition, the informer personally observed appellant selling pills seventeen days prior to the issuance of the warrant, and had observed large quantities of drugs in appellant's possession upon her return from Miami several times in the past year. The detailed nature of these observations, many of which were made personally by the informer, clothed the hearsay information in this case with sufficient reliability to meet the constitutional test for reliability.

Appellant further contends that the seventeen-day lapse from the time when the informer last observed a sale of pills until the time when the warrant was issued precludes a finding of probable cause. We conclude that, under the circumstances in this case, the informer's tip was not stale.

Probable cause for issuance of a search warrant requires reasonably current and not "stale" information. Fowler v. State, 121 Ga. App. 22, 23 (172 SE2d 447) (1970). Thus a magistrate must carefully consider the timeliness of the occurrence of the facts described in the supporting affidavit when making his probable cause

determination. "[I]t is manifest that the proof [of probable cause] must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time. Whether the proof meets this test must be determined by the circumstances of each case." Sgro v. United States, 287 U. S. 206, 210-11 (53 SC 138, 77 LE 260) (1932).

We conclude that the information before the magistrate authorized him to find probable cause for a search of appellant's car and person on September 18, 1978. The nature of the alleged criminal activity is an important factor to be considered when assessing the timeliness of an informant's tip. See *State v. Boswell,* 131 Ga. App. 657 (206 SE2d 682) (1974) (two-week time lapse not fatal where case involved a series of thefts at one location); People v. Wilson, 268 Cal. App. 581 (74 Cal. Rptr. 131) (1968) (two-week time lapse not fatal in marijuana case); State v. Blaurock, 143 N. J. Super. 476 (363 A2d 909) (1976) (eighteen-day time lapse not fatal where case involved a continuing marijuana offense). See also cases collected at 100 ALR2d 525, 542 (1965).

The sworn testimony before Judge Reeves authorized him to find that appellant was engaged in a continuing scheme to sell illegal drugs over a period of several months rather than a single isolated offense. "Where the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time. However, where the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant." United States v. Johnson, 461 F2d 285, 287 (10th Cir. 1972). We note that one apparent reason for the delay in this case was that appellant was frequently out of town, and was in fact gone on a trip to Miami for fourteen of the seventeen days in question. Cf. People v. McCants, 59 A. D. 2d 999, 399 NYS2d 715 (N. Y. App. 1977) (eleven-day time lapse not fatal where suspect was out of town).

For the above reasons, we hold that the trial court correctly denied appellant's motion to suppress.

3. In her fourth enumeration of error, appellant contends that it was error to allow a police officer to testify as to certain statements she made while in police custody. At trial, Officer Mike Thomas testified that when appellant was asked to open her pocketbook and display its contents to police, she responded, "No . . . I'm not going to let you look inside of it." Thomas then searched appellant's purse and discovered the controlled substances. Citing Code Ann. § 27-1302, appellant argues that this testimony was inadmissible because the state failed to supply her with a copy of this statement within ten days

prior to trial.[6]

Some four weeks before trial, appellant filed a "Motion To Compel Disclosure of Information Necessary to Receive a Fair Trial" requesting, among other things, "[a]ll written or recorded statements and all summaries or memoranda of any oral or written statements made by the named defendant . . ." Tabb requested that these materials be produced "prior to . . . trial . . . at a time to be fixed by the court."

This motion was not sufficient to invoke the provisions of Code Ann. § 27-1302 under our decisions construing that statute. "To constitute a request for discovery under § 27-1302, a pleading must either make specific reference to § 27-1302, or make it clear that written copies of the defendant's own statements are to be furnished to the defense at least ten days prior to trial." *McCarty v. State,* 249 Ga. 618, 620 (292 SE2d 700) (1982). Appellant's motion did neither. Therefore the trial court did not err in admitting her statement at trial. See *State v. Madigan,* 249 Ga. 571 (292 SE2d 406) (1982); *State v. Meminger,* 249 Ga. 561 (292 SE2d 681) (1982).

4. Appellant contends that a mistrial should have been declared because the state improperly placed her character in issue. We can find no basis in the record for this enumeration. The testimony objected to by appellant concerned dealings in drugs at her place of business, and was relevant to show intent to distribute controlled substances. We therefore find no error.

5. In her final three enumerations, appellant objects to the admission into evidence of copies of drug prescriptions written to her by various Miami pharmacists on the grounds that these documents were never properly authenticated and were not the best evidence. We disagree.

The record shows that the trial court originally declined to admit the proffered evidence and instructed the jury to disregard it. Subsequently, appellant took the stand and testified at length about the doctors she saw in Miami, prescriptions she obtained from them, and drug stores where the prescriptions were filled. After a proper foundation was laid and appellant authenticated the evidence by her own testimony, the state introduced into evidence photocopies of the prescriptions. Under these circumstances, we find that the evidence was properly admitted.

*Judgment affirmed. All the Justices concur, except Bell, J., not*

---

[6] Because we conclude that appellant failed to make a proper request for discovery under § 27-1302, we need not decide whether appellant's statements in this case were discoverable material within the meaning of that statute.

*participating.*

Decided November 12, 1982 —
Rehearing denied November 29, 1982.

*Stone & Stone, William S. Stone,* for appellant.
*Charles M. Ferguson, District Attorney,* for appellee.