STATE OF NORTH CAROLINA v. GRADY MELVIN HOLLOWAY

No. 8323SC116

(Filed 21 February 1984)

1. **Searches and Seizures § 28— official issuing warrant—failure to allow examination concerning impartiality—improper**

   The Fourth Amendment requires that warrants be issued only upon a determination by a "neutral and detached magistrate." To reach a decision as to whether the magistrate was impartial, the trial court must find (1) the *office* held by the person issuing the warrant must be independent of "connection with any law enforcement activity or authority which would distort the independent judgment the Fourth Amendment requires," and (2) that the person holding office performed his duties in a neutral and detached manner. Therefore, although a deputy clerk of superior court was clearly authorized to issue a search warrant, the trial judge erred in failing to admit evidence concerning the "neutrality" of the issuing official where the defendant presented evidence tending to show that the clerk may have issued the warrant *because of* her personal convictions and social relationship with other parties vitally concerned with the judicial function involved.

2. **Searches and Seizures § 28— sufficiency of evidence to support issuance of search warrant**

   In a prosecution for trafficking in methaqualone, defendant failed to carry its burden of showing by a preponderance of the evidence that there were false statements knowingly included in an affidavit supporting a search warrant, and the record revealed sufficient competent evidence to support the trial court's findings of fact and conclusion that probable cause existed for the issuance of the warrant. G.S. 15A-977(f).

3. **Searches and Seizures § 39— search warrant for restaurant—search of locked basement proper**

   There was no error in the trial court's denial of defendant's motion to suppress evidence seized from the basement portion of the premises where, after executing the search warrant in the upstairs portion of the premises, the law enforcement officers proceeded to the basement which was locked, no key was readily available, and they cut the lock from the door and proceeded to search the basement. G.S. 15A-251.

4. **Searches and Seizures § 40— failure to suppress evidence of items seized which was not listed on warrant—proper**

   There was no error in allowing evidence of marijuana which was properly seized when it was found during a search for methaqualone which had been conducted pursuant to a valid search warrant.

   Judge HEDRICK dissenting.

APPEAL by defendant from *Mills, Judge*. Judgment entered 21 September 1982 in Superior Court, WILKES County. Heard in the Court of Appeals 18 October 1983.

*Attorney General Edmisten, by Assistant Attorney General Steven F. Bryant and Special Deputy Attorney General Jo Anne Sanford, for the State.*

*Moore & Willardson, by Larry S. Moore, John S. Willardson, and William F. Lipscomb, for defendant appellant.*

BECTON, Judge.

After the trial court denied defendant's motion to suppress evidence seized during the execution of a search warrant, defendant, pursuant to the provisions of N.C. Gen. Stat. § 15A-979(b) (1983), entered a plea of guilty to trafficking in methaqualone in violation of N.C. Gen. Stat. § 90-95(h)(2)(b) (1981 & Supp. 1983) and trafficking in marijuana in violation of N.C. Gen. Stat. § 90-95(h)(1)(b) (1981 & Supp. 1983). Defendant was sentenced to a term of fourteen years. From the court's ruling on his motion to suppress, the defendant appeals.

I

Defendant first assigns error to the trial court's denial of his motion to suppress evidence seized pursuant to a search warrant. Defendant contends, first, that the warrant was not issued by a "neutral and detached magistrate" as required by law; and, second, that the trial court erroneously prevented preservation of evidence to this effect for the record on appeal.

[1] The Fourth Amendment requirement that warrants be issued only upon the determination by a "neutral and detached magistrate" that probable cause exists has long been recognized by the courts of the country. *Johnson v. United States*, 333 U.S. 10, 92 L.Ed. 436, 68 S.Ct. 367 (1948). Our examination of the law as it has developed since *Johnson* reveals that the broad requirement of a "neutral and detached magistrate" involves two distinct concepts. First, the *office* held by the person issuing the warrant must be independent of "connection with any law enforcement activity or authority which would distort the independent judgment the Fourth Amendment requires." *Shadwick v. City of Tampa*,

407 U.S. 345, 350-51, 32 L.Ed. 2d 783, 789, 92 S.Ct. 2119, 2123 (1972). For example, in *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L.Ed. 2d 564, 91 S.Ct. 2022 (1971), the Supreme Court held that a state attorney general was not a neutral and detached magistrate by virtue of his office, saying: "[T]here could hardly be a more appropriate setting than this for a *per se* rule of disqualification rather than a case-by-case evaluation of all the circumstances." *Id.* at 450, 29 L.Ed. 2d at 573, 91 S.Ct. at 2029. Similarly, in *Connally v. Georgia*, 429 U.S. 245, 50 L.Ed. 2d 444, 97 S.Ct. 546 (1977), the Supreme Court held that an official who was compensated on a per warrant basis could not be considered neutral and detached.

We turn now to the second concept. It is not enough, say our courts, that the *office* be neutral and detached. The person holding office must perform his duties in a neutral and detached manner. In *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 60 L.Ed. 2d 920, 99 S.Ct. 2319 (1979), the Supreme Court held that a judicial officer lost "whatever neutral and detached posture [that] existed at the outset" when he "allowed himself to become a member, if not the leader, of the search party which was essentially a police operation." *Id.* at 327, 60 L.Ed. 2d at 928-29, 99 S.Ct. at 2324. In *State v. Miller*, 16 N.C. App. 1, 190 S.E. 2d 888 (1972), *modified and aff'd*, 282 N.C. 633, 194 S.E. 2d 353 (1973), this Court held that a warrant was not issued by a neutral and detached magistrate where the official failed to read the affidavit offered in support of the warrant application. Under those circumstances, said this Court, the magistrate "utterly failed to perform the important judicial function which it was his duty to perform. . . ." *Miller*, 16 N.C. App. at 10, 190 S.E. 2d at 894.

In the case before us, the motion to suppress on grounds that the warrant was not issued by a neutral and detached official necessitated inquiry by the trial judge into whether the warrant was issued by a person holding proper independent office. Because defendant had produced no evidence to the contrary, this initial inquiry required only that the judge determine from the face of the warrant that it was in fact issued by an official authorized to do so in this State. The issuing official, Janet Handy, as a Deputy Clerk of Superior Court in Wilkes County, was clearly authorized to issue search warrants. *See* N.C. Gen. Stat. § 15A-243(b)(2) (1983) and N.C. Gen. Stat. §§ 7A-180 to 181 (1981).

With regard to the second requirement, the trial judge had to consider the manner in which Ms. Handy performed her judicial function of determining, from the evidence before her, the existence of probable cause. Although the record discloses that Ms. Handy read the supporting affidavit supplied by the officers who requested the warrant and questioned one of the officers as to the contents of the affidavit, these facts do not conclusively demonstrate that Ms. Handy performed her duties in a neutral and detached fashion. Defendant specifically asserted that Ms. Handy's decision to issue the warrant was based on personal reasons and personal relationships. We hold that the trial court erred in denying, on relevancy grounds, defendant an opportunity to develop, even for purposes of the record, matters that could show that Deputy Clerk Handy did not perform her function in a neutral and detached way.[1]

The "neutrality" and "detachment" of the issuing official can be challenged on the basis of personal, political, or economic conditions or relationships. *See generally* 2 W. LaFave, *Search and Seizure* § 4.2 (1978). It begs the question to suggest that defendant's inquiry is irrelevant and goes to a "person's personal life" when defendant's inquiry is specifically designed to show that Ms. Handy issued the warrants *because of* her personal convictions and social relationships with other parties vitally concerned with the judicial function involved.

If the circumstances under which the neutrality and detachment of the issuing official can be challenged are not here presented, will they ever be? Consider the following factors, in the light most favorable to the defendant, known by the trial judge at the suppression hearing:

---

1. The basis for the trial court's decision is shown in the following excerpt from the Record:

Q. Now, did you have any type of social relationship with any of the officers?

MR. ASHBURN: Objection.

COURT: Sustained.

MR. WILLARDSON: I think at this point this could be important to our motion. We think this goes to the heart of the matter.

a. On 17 March 1982, Wilkes County Magistrate Barry Wood, on the basis of information submitted to him by three law enforcement officers, concluded that there was no probable cause to justify the issuance of a search warrant for Staley's Restaurant in Wilkes County;

b. Michael Ashburn, the District Attorney for the Twenty-Third Judicial District, in a telephone conversation with Magistrate Wood and the three law enforcement officers, confirmed that there was no probable cause to justify the issuance of the search warrant;

c. On the following day, the three law enforcement officers received from Janet Handy, a Deputy Clerk of the Superior Court of Wilkes County, a warrant to search Staley's Restaurant without advising her that Magistrate Wood had turned down a search warrant for the same premises the night before. (The affidavit presented to Ms. Handy presumably included an allegation that an informant had observed methaqualone in Staley's Restaurant within the past 48-hour period.);

d. At the time Ms. Handy issued the search warrant she was allegedly dating one or two of the law enforcement officers who applied to her for the search warrant. (Indeed, the trial court, not being concerned with hearsay at the suppression hearing, allowed Magistrate Wood to testify that he had heard that one or both of the S.B.I. agents were dating Janet Handy at the time the search warrant was issued.);

e. Ms. Handy, at the suppression hearing, stated, among other things, that "I am interested in how much time he

COURT: It is going to be a sad thing if a person's personal life is going to be called into court. If that happened to me, I would quit, if I worked in the Clerk's office—if I were called into court and had to be questioned about my personal life. That objection is sustained.

MR. WILLARDSON: I ask that it be answered for the record.

COURT: I sustained the objection.

MR. WILLARDSON: Can she whisper the answer for the record?

COURT: I sustained the objection.

[the defendant] is going to get." She further testified that she would like to see Mr. Holloway get some time out of this; and

f. The search warrant was procured on the basis of statements allegedly made to the law enforcement officers by a confidential source of information, later identified as Michael Walter Jarvis. Michael Walter Jarvis, however, testified at defendant's suppression hearing and disavowed every allegation of fact attributed to him by the law enforcement officers in their application for the search warrant.

Now, we do not suggest that the law enforcement officers were forever bound by Magistrate Wood's determination on 17 March 1982 that no probable cause then existed. Nor do we suggest that the trial court could not consider the personal interest or "stake" Michael Walter Jarvis had in disavowing that he was a confidential informant. Rather, we suggest that the factors listed above show that defense counsel was not on a fishing expedition. Defense counsel had a good faith basis for trying to develop a record that Ms. Handy's bias or interest (just like Michael Walter Jarvis' bias or interest) affected the manner in which she purported to perform her duties.

This is not a case in which a defendant merely alleges that the magistrate or other issuing official and the law enforcement officer who seeks the search warrant are neighbors, hunting partners, or lifelong friends. On those facts, the trial court's decision might gain our concurrence. The facts and circumstances in this case are substantially more compelling, however, and defendant is entitled to a plenary hearing to develop an adequate record, at least for appellate purposes, to support his contentions. On the basis of the information available to it, the trial court erred in restricting defendant's examination of Ms. Handy and in concluding that Ms. Handy's personal life should not be called into court.

After all, the search warrant process interposes an orderly procedure in which an impartial magistrate can make an informed decision on the issue of probable cause. 2 W. LaFave, *supra* p. 4, § 4.2, at 29. Were it otherwise, there would be no need to inquire into a magistrate's attributes, motives, or particular conduct in is-

suing a search warrant. Fortunately, the law recognizes that a magistrate may have such a personal interest in a case that the magistrate cannot be deemed to be impartial. It is the *quid pro quo* — the issuing of a warrant in exchange for some benefit — that is important. Simply put, defendant's reliance on *Connally v. Georgia*, 429 U.S. 245, 50 L.Ed. 2d 444, 97 S.Ct. 546 (1977) is not misplaced since his

> situation, again, is one which offers a 'possible temptation to the average [woman] as a judge . . . or [it] might lead [her] not to hold the balance nice, clear and true between the State and the accused.' It is, in other words, another situation where the defendant is subjected to what surely is judicial action by an officer of a court who has 'a direct, personal, substantial, pecuniary interest' in [her] conclusion to issue or deny the warrant.

*Id.* at 250, 50 L.Ed. 2d at 448, 97 S.Ct. at 548.

II

**[2]**   Defendant next contends the trial court erred in denying his motion to suppress since there was no probable cause for issuance of the search warrant. Defendant attacks the affidavit used to secure the warrant alleging "that the confidential informant described therein was a complete and total fabrication on the part of the law enforcement officers." At the hearing on his motion, defendant presented evidence from one Michael Jarvis who denied each allegation of fact attributed to the confidential informant and stated that he never gave any information to the law enforcement officers as a confidential informant. The law enforcement officers who procured and executed the search warrant then testified that Michael Jarvis was their confidential source and that he gave the information attributed to a confidential source in the search warrant.

Defendant has the burden of establishing by a preponderance of the evidence that false statements were knowingly and intentionally included in the warrant and affidavit by the affiant. *Franks v. Delaware*, 438 U.S. 154, 57 L.Ed. 2d 667, 98 S.Ct. 2674 (1978). The trial court found the following pertinent facts:

> [T]he court further finds that Officer Sam Winters testified that the confidential informant, on whom he relied, was Mi-

chael Jarvis; and that Officer Winters further testified that the information set forth in the affidavit furnished to the magistrate had indeed been furnished to him by said Michael Jarvis. The court further finds that Michael Jarvis had earlier testified that he was not the confidential informant relied upon by Agent Stubbs or Deputy Sheriff Winters; and that Michael Jarvis, in his testimony, denied furnishing any information to the officers concerning the affidavit used to secure the issuance of this search warrant. The court further finds that prior to taking the stand and testifying, Michael Jarvis took an oath on the Bible to tell the truth and that Detective Winters took an oath on the Bible to tell the truth. The court further finds the court has absolutely no reason to doubt the veracity of Officer Sam Winters; and therefore, the court relies upon the testimony of Detective Winters in reaching its conclusion as to the reliability of the information furnished in the affidavit used to secure the issuance of this search warrant.

N.C. Gen. Stat. § 15A-977(f) (1983) requires the trial court to make findings of fact after a hearing on a motion to suppress. The weight given the testimony is properly for the finder of fact. The facts found by the trial court are binding if supported by competent evidence. *State v. Barfield,* 298 N.C. 306, 259 S.E. 2d 510 (1979), *cert. denied,* 448 U.S. 907, 65 L.Ed. 2d 1137, 100 S.Ct. 3050 (1980). The record reveals sufficient competent evidence to support the court's findings of fact. Therefore, defendant having failed to carry his burden of showing by a preponderance of the evidence that there were false statements knowingly included in the affidavit, the assignment of error is overruled.

III

[3]   Defendant finally contends that the trial court erred in denying his motion to suppress evidence seized from the basement portion of the searched premises. After executing the search warrant in the upstairs portion of the premises, which was used as a restaurant, the law enforcement officers proceeded to the basement, which could only be entered from outside the premises. Upon finding the basement locked the officers attempted to obtain a key. When they were told that defendant had just left for Winston-Salem, with the only key, they cut the lock from the door

and proceeded to search the basement. A search of the basement revealed 792 pounds of marijuana and 8,450.9 dosage units of methaqualone.

Defendant contends the officers' forced entry into the basement violated the restrictions set forth in N.C. Gen. Stat. § 15A-251 (1983) which provides:

An officer may break and enter any premises or vehicle when necessary to the execution of the warrant if:

(1) The officer has previously announced his identity and purpose as required by G.S. 15A-249 and reasonably believes either that admittance is being denied or unreasonably delayed or that the premises or vehicle is unoccupied; or

(2) The officer has probable cause to believe that the giving of notice would endanger the life or safety of any person.

Defendant argues that since the upstairs portion of the premises was occupied, N.C. Gen. Stat. § 15A-251 required that the officers place the premises under guard and await the return of Mr. Holloway, and that their forced entry was thus unauthorized. The suggested procedure would cause an unreasonable delay and is clearly not mandated by the statute.

[4] Defendant further argues that the marijuana should be suppressed because marijuana was not listed as an item to be seized and because it was not in plain view. The marijuana was discovered while the officers were searching the premises for methaqualone pursuant to a search warrant. "When officers are conducting a valid search for one type of contraband, and find other types . . . , the law is not so unreasonable as to require them to turn their heads." *State v. Oldfield,* 29 N.C. App. 131, 135, 223 S.E. 2d 569, 571, *cert. denied,* 290 N.C. 96, 225 S.E. 2d 325 (1976). The marijuana was properly seized when it was found during the search for methaqualone. The assignment of error is overruled.

IV

For the reasons set forth in part I of this opinion we hold that the trial court's decision to deny defendant an opportunity to

develop, even for purposes of the record on appeal, matters that could show that the person who issued the search warrant did not perform her function in a neutral and detached way was error. Defendant is entitled to a plenary hearing in an effort to support his contention, and this case is accordingly

Reversed and remanded.

Judge HEDRICK dissents.

Judge EAGLES concurs.

Judge HEDRICK dissenting.

I agree with that part of the majority opinion which concludes that the Deputy Clerk had probable cause to issue the search warrant, and that the trial judge did not err in denying defendant's motion to suppress the evidence seized pursuant to a search of the basement of the building described in the warrant. I strenuously disagree, however, with the majority's holding that the trial judge erred in not requiring the issuing magistrate to answer, "even for purposes of the record on appeal," whether she had "any type of social relationship with any of the officers." Further, I question the clarity of the majority's order that reverses "this case," and remands for "a plenary hearing," at which defendant is to be given an opportunity "to develop an adequate record, at least for appellate purposes, to support his contentions."

N.C. Gen. Stat. Sec. 15A-977(a), in pertinent part, provides:

A motion to suppress evidence in superior court made before trial must be in writing and a copy of the motion must be served upon the State. The motion must state the grounds upon which it is made. *The motion must be accompanied by an affidavit containing facts supporting the motion.* The affidavit may be based upon personal knowledge, or upon information and belief, *if the source of the information and the basis for the belief are stated.* The State may file an answer denying or admitting any of the allegations.

(Emphasis added.) The Official Commentary immediately following this statute states:

This section is structured to produce in as many cases as possible a summary granting or denial of the motion to suppress. The defendant must file an affidavit as to the facts with his motion, and the State may file an answer denying or admitting facts alleged in the affidavit. If the motion cannot be otherwise disposed of, subsection (d) provides for a hearing at which testimony under oath will be given. . . .

In the instant case, the unverified motion to suppress, signed by defendant's counsel, states:

4. Defendant is informed and believes and alleges on information and belief that the aforesaid Deputy Clerk of Superior Court of Wilkes County was not a "neutral and detached magistrate" as required to justify the issuance of the search warrant. . . .

The motion did not identify the "source of the information and the basis for the belief," nor was it accompanied by a supporting affidavit. Contrary to the majority's statement that "[d]efendant specifically asserted that Ms. Handy's decision to issue the warrant was based on personal reasons and personal relationships," defendant failed to set out in his motion a single fact or contention even hinting at such an assertion. Because defendant failed to identify any factual basis for his challenge to the Deputy Clerk's issuance of the warrant, I believe the trial judge could have confined his inquiry to an examination of the warrant and affidavit filed in support thereof.

Our conclusion in this regard finds support in a decision by the California Court of Appeals, reached on similar facts. In *People v. Kashani*, 143 Cal. App. 3d 77, 191 Cal. Rptr. 562 (1983), the defendant sought to suppress evidence seized pursuant to a search warrant based on her specific allegation that the issuing magistrate had failed to read all the supporting material prior to issuing the warrant. The trial court quashed service of a subpoena on the issuing official, ruling that defendant had alleged insufficient facts to overcome the "presumption of regularity attending issuance of the warrant." *Id.* at 79, 191 Cal. Rptr. at 563. On appeal, defendant contended she was "prejudicially denied the opportunity to establish fatal irregularity by the magistrate in the issuance of the search warrant." *Id.* The response of the California court is instructive:

Absent some palpable indication to the contrary, it is assumed the magistrate considered all the material presented him in support of an application for search warrant. . . . This assumption is not indulged where substantial irregularity appears on the face of the record. . . . If the assumption arises, however, the burden of dispelling it rests on defendant. . . . That burden is not satisfied by a sweeping pro forma assertion that the magistrate did not read all material offered in support of the search warrant application. . . . Such an assertion could and, if deemed legally adequate to place in issue the conduct of the magistrate, most assuredly would be made in virtually every instance where a search warrant has been issued.

*Id.* at 79-80, 191 Cal. Rptr. at 564.

In the present case, examination of the warrant and supporting affidavit discloses no irregularity such as was present in *State v. Miller*, 282 N.C. 633, 194 S.E. 2d 353 (1973). And in North Carolina, as in California, "[a] search warrant is presumed to be valid unless irregularity appears on its face." *State v. Dorsey*, 60 N.C. App. 595, 597, 299 S.E. 2d 282, 283, *disc. rev. denied*, 308 N.C. 192, 302 S.E. 2d 245 (1983). I would hold on these facts that the trial judge was not obliged to permit defense counsel to conduct a sweeping inquiry into Ms. Handy's social relationships or personal convictions.

While I believe the trial judge could have summarily disposed of defendant's contention that the search warrant was not issued by a neutral and detached magistrate, I feel compelled to address as well the majority discussion of the substantive law in this area. It is not surprising that the majority cites no authority for the ill-founded notion that the social relationships of a magistrate have possible relevance to her status as a neutral and detached official. My research has failed to disclose a single case in which the issuance of a search warrant was successfully challenged on these grounds. Indeed, the most impressive aspect of research on the matter is the infrequency with which courts and commentators have even recognized the possibility of such a claim.

In a recent Georgia case, *Tabb v. State*, 250 Ga. 317, 297 S.E. 2d 227 (1982), the defendant challenged issuance of a search war-

rant on the grounds that the issuing magistrate was not neutral and detached "because of his personal association with police officers." *Id.* at 321, 297 S.E. 2d at 231. The defendant presented evidence that the issuing magistrate served as county coroner, that he had formerly been employed as a deputy sheriff, and that he "regularly visited the sheriff's office and county jail." *Id.* The Georgia Supreme Court upheld the lower court's ruling that these facts did not destroy the magistrate's status as a neutral and detached official. The court said, "[m]ere personal associations with police officers, without more, do not disqualify a magistrate from issuing a search warrant." *Id.* The court distinguished an earlier case, *Thomason v. State*, 148 Ga. App. 513, 251 S.E. 2d 598 (1978), "where the officer who issued the warrant took part in the actual search and seizure of evidence," saying, "[t]here is no evidence of such misconduct . . . in this case." *Tabb v. State*, 250 Ga. at 321, 297 S.E. 2d at 232.

The focus of the Georgia court on the *manner in which the officer performed his judicial function* is typical of courts confronted with challenges to the neutrality and detachment of issuing magistrates. *See, e.g., Clodfelter v. Commonwealth*, 218 Va. 98, 235 S.E. 2d 340 (1977) (warrant issued two minutes after supporting affidavit filed not *per se* invalid); *State v. Miller*, 282 N.C. 633, 194 S.E. 2d 353 (1973) (warrant and supporting affidavit disclosed on face failure to properly perform judicial function); *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 326-27, 99 S.Ct. 2319, 2324, 60 L.Ed. 2d 920, 928-29 (1979) ("We need not question the subjective belief of the Town Justice in the propriety of his actions, but the objective facts of record manifest an erosion of whatever neutral and detached posture existed at the outset. He allowed himself to become a member, if not the leader of the search party. . . ."). This focus on the facts relating to the official's performance of his judicial function has been echoed by the commentators:

> Sometimes the claim is that the magistrate, while not having a financial interest in the case, had a sufficient personal interest that he cannot be deemed to have been impartial. When based upon nothing more than the fact that the magistrate was previously acquainted with the defendant and was aware of his criminal ways, this contention has rightly been rejected. Somewhat more difficult are those instances in

which the magistrate is involved or interested in some way in the criminal activity with which the warrant is concerned. It has been held that a search warrant may be issued by a judge who knew he would probably be a witness in the forthcoming prosecution because the affidavit alleged the use of fraudulent court orders in the criminal scheme. Some limited "encouragement" to the police by the magistrate, influencing the obtaining of the warrant, has likewise been deemed not fatal, but the magistrate can go too far. . . . Another way in which the constitutional requirement that a search warrant be issued by a neutral and detached person may come into play is because of the conduct of the magistrate issuing the warrant. It is sometimes alleged that, while the magistrate was not disqualified from issuing warrants, his actions in a particular case demonstrate that he was neither neutral nor detached. But these contentions have seldom prevailed.

2 W. LaFave, *Search and Seizure* Sec. 4.2 (1978). *See also* 8B James Wm. Moore, *Moore's Federal Practice* Sec. 41.03 (2d ed. 1983): "Because of the comparative accessibility to review, this . . . question [of who can be neutral and detached] tends to focus on *situational* neutrality and detachment rather than *emotional* or *intellectual* absence of bias" (emphasis original) (citing *Connally v. Georgia*, 429 U.S. 245, 97 S.Ct. 546, 50 L.Ed. 2d 444 (1977); *Lo-Ji Sales, Inc. v. New York, supra*).

Bearing in mind this emphasis on the objective circumstances surrounding the magistrate's performance of her judicial function, we note the following facts. The Deputy Clerk in this case testified that she read the supporting affidavit supplied by the officers requesting the warrant. She testified that she placed one of the officers under oath and interrogated him as to the contents of the affidavit. The majority has upheld the trial court's conclusion that the affidavit established probable cause for issuance of the search warrant. I think these facts establish that Ms. Handy properly performed her judicial function.

Despite the uncontradicted facts set out above, the majority concludes that the court committed prejudicial error when it refused to order Ms. Handy to answer a question about whether she has "any type of social relationship with any of the officers." The majority attempts to bolster its conclusion by listing facts

State v. Holloway

that are clearly irrelevant to whether the Deputy Clerk was a neutral and detached magistrate. This reliance on extraneous circumstances, such as the testimony of the alleged confidential informant, for example, is in my opinion confusing and misplaced. It makes even more difficult that task I now turn to—determination of "the rule," set forth in the majority decision, by which lower courts are to be guided in the future.

Under the majority opinion, the test to be used in determining the relevance of profferred evidence in a challenge to the neutrality and detachment of a judicial officer is so unclear as to be no test at all. At one point, the majority states: "It is the *quid pro quo*—the issuing of a warrant in exchange for some benefit—that is important," citing *Connally*, with its language about "a direct, personal, substantial, *pecuniary* interest." (Emphasis added.) While I have no quarrel with this "warrant for benefit" test, I am baffled by any suggestion of its relevance to these facts. There is contained nowhere in the record or briefs any slight hint that Ms. Handy issued the warrant in exchange for some benefit. If this is indeed the test, the question concerning Ms. Handy's "social relationships" was clearly irrelevant.

Other portions of the majority opinion suggest that it is not "benefit" that is crucial in determining the neutrality and detachment of the issuing official, but rather the "personal convictions and social relationships" of the magistrate whose performance is called into question. I do not doubt that deputy clerks, like the rest of us, are influenced in their perceptions and behavior by a myriad of factors, not the least of which are their personal convictions and social relationships. Indeed, an entire scientific field is devoted to identifying and understanding the extremely varied and complex causes of human behavior. I think it sheer folly, however, to attempt, as the majority does here, to categorize "personal convictions and social relationships" based on nothing more than one's own personal experiences and unvalidated assumptions. That folly is illustrated, I believe, by the majority's bare assertion that relationships such as those between "neighbors, hunting partners, or lifelong friends" pose less threat to the neutrality and detachment of the issuing official than do the "social relationships" here inquired about. However desirable it may be to understand fully the subjective process underlying every judicial decision, the reality is that this is a goal impossible

of attainment. The law must content itself with assuring that an official charged with performance of a judicial function performs that function in an objectively proper manner. The evidence clearly establishes that Ms. Handy acted properly in issuing the search warrant. To say that a showing of proper performance of duty may be overcome by a showing of possible subjective bias is, to my mind, to create virtually unlimited opportunity for confusion, inconsistency, and "frivolous attacks upon [the] dignity and integrity [of the judiciary]." *United States v. Dowdy*, 440 F. Supp. 894, 896 (W.D. Va. 1977).

Finally, I wish to address this Court's disposition of the case, in light of its resolution of the issues. When an appellate court remands a case for further proceedings, it is the duty of that court to give a clear mandate to the trial court as to how it shall proceed. Consider the confusion occasioned by the decision here that "reverses and remands" "this case" for "a plenary hearing" at which defendant is entitled to be given an opportunity "to support his contention." What is reversed? What is affirmed? Since defendant's "contentions" are nowhere specified, where is the "plenary hearing" to end? To what extent is counsel to be permitted to delve into the "personal convictions and social relationships" of the judicial official, and to what end?

In conclusion, I feel that today's decision represents a radical and ill-advised extension of the law as it relates to the constitutional right to have the determination of probable cause made by a neutral and detached magistrate. More alarming still is the majority's failure to anticipate and respond to the short-term and long-term effects of its unprecedented holding. For these reasons, I dissent and vote to affirm the judgment.