Grady Melvin **HOLLOWAY**, Petitioner,

v.

James C. **WOODARD**, Secretary, North Carolina Department of Correction, and Rufus Edmisten, Attorney General for the State of North Carolina, Respondents.

No. ST–C–84–200–M.

United States District Court,
W.D. North Carolina,
Statesville Division.

March 16, 1987.

Larry S. Moore and John Willardson, North Wilkesboro, N.C., for petitioner.

Barry S. McNeill, Asst. Atty. Gen., North Carolina Dept. of Justice, Raleigh, N.C., for respondents.

## ORDER

McMILLAN, District Judge.

Grady Melvin Holloway petitions this court for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254.

Holloway was charged with trafficking in methaqualone and in marijuana. At Superior Court, Wilkes County, North Carolina, Holloway entered pleas of not guilty to both indictments and filed a motion to suppress. After a hearing, the trial court denied the motion. Holloway then changed his plea from not guilty to guilty, reserving his right to appeal from the denial of his motion to suppress in accordance with the provisions of N.C.G.S. § 15A–979(b). The trial court sentenced Holloway to a 14–year term of imprisonment and fined him $50,-000.00.

In this *habeas corpus* petition Holloway challenges the trial court's denial of his motion to suppress, and the subsequent treatment of his case by the North Carolina Supreme Court.

In his motion to suppress filed in the trial court, Holloway contended *inter alia* that the warrant was issued without probable cause and was improperly executed. He also made the following allegation:

4. The defendant is informed and believes and alleges on information and belief that the aforesaid Deputy Clerk of Superior Court of Wilkes County was not a "neutral and detached magistrate" as required to justify the issuance of the search warrant, *State v. Miller*, 16 N.C. App. 1 [190 S.E.2d 888 (1972) ]; *State v. Campbell*, 282 N.C. 125 [191 S.E.2d 752 (1972) ] and/or that the application for a search warrant was inadequate.

The motion did not include an affidavit as to these facts as required by N.C.G.S. 15A–

977(a). The prosecutor did not object to this procedural deficiency, and the trial court held a hearing to consider Holloway's contentions. At this hearing, the following evidence was introduced:

a.  On 17 March 1982, Wilkes County Magistrate Barry Wood, on the basis of information submitted to him by three law enforcement officers, concluded that there was no probable cause to justify the issuance of a search warrant for Staley's Restaurant in Wilkes County.

b.  Michael Ashburn, the District Attorney for the Twenty-Third Judicial District, in a telephone conversation with Magistrate Wood and the three law enforcement officers, confirmed that there was no probable cause to justify the issuance of the search warrant.

c.  On the following day, the three law enforcement officers obtained from Janet Handy, a Deputy Clerk of the Superior Court of Wilkes County, a warrant to search Staley's Restaurant without advising Ms. Handy that Magistrate Wood had turned down a search warrant for the same premises the night before. (The affidavit presented to Ms. Handy presumably included an allegation that an informant had observed methaqualone in Staley's Restaurant within the past 48–hour period.)

d.  At the time Ms. Handy issued the search warrant she was allegedly dating one or two of the law enforcement officers who applied to her for the search warrant. (Indeed, the trial court, not being concerned with hearsay at the suppression hearing, allowed Magistrate Wood to testify that he had heard that one or both of the S.B.I. agents were dating Janet Handy at the time the search warrant was issued.)

e.  Ms. Handy, at the suppression hearing, stated, among other things, that "I am interested in how much time he [the defendant] is going to get." She further testified that she would like to see Mr. Holloway get some time out of this.

f.  The search warrant was procured on the basis of statements allegedly made to the law enforcement officers by a confidential source of information, later identified as Michael Walter Jarvis. Michael Walter Jarvis, however, testified at defendant's suppression hearing and disavowed every allegation of fact attributed to him by the law enforcement officers in their application for the search warrant.

*State v. Holloway*, 66 N.C.App. 491, 495–96, 311 S.E.2d 707 (1984).

Deputy Clerk Janet Handy testified as to the facts surrounding her issuance of the search warrant. During cross-examination by defense counsel, the following colloquy took place:

Q.  Now, did you have any type of social relationship with any of the officers?

Mr. Ashburn: Objection.

Court: Sustained.

Mr. Willardson: I think at this point this could be important to our motion. We think this goes to the heart of the matter.

Court: It is going to be a sad thing if a person's personal life is going to be called into court. If that happened to me, I would quit, if I worked in the Clerk's office—if I were called into court and had to be questioned about my personal life. That objection is sustained.

Mr. Willardson: I ask that it be answered for the record.

Court: I sustained the objection.

Mr. Willardson: Can she whisper the answer for the record?

Court: I sustained the objection.

The trial court held that Deputy Clerk Handy had had probable cause to issue the warrant and that she had been neutral and detached when she had done so. The defendant appealed these rulings.

The North Carolina Court of Appeals reversed. It affirmed the trial court on its ruling that there was probable cause, finding that the resolution of conflicting testi-

mony on this issue was within the discretion of the trial court. However, it held:

> [T]hat the trial court erred in denying, on relevancy grounds, defendant an opportunity to develop, even for purposes of the record, matters that could show that Deputy Clerk Handy did not perform her function in a neutral and detached way.

*State v. Holloway*, 66 N.C.App. 491, 494, 311 S.E.2d 707 (1984).

The court remanded the case to the district court for a "plenary hearing to develop an adequate record, at least for appellate purposes, to support [the defendant's] contentions." *Id.*, at 496, 311 S.E.2d 707.

Judge Hedrick of the Court of Appeals dissented. He argued that defendant had forfeited his right to assert his constitutional contentions in the trial court by his counsel's failure to file an affidavit with the motion to suppress. Judge Hedrick argued that because the trial judge *could* have dismissed the defendant's motion to suppress for this procedural irregularity, the ruling of the trial court denying the motion *on the merits* need not be considered on appeal. Counsel had not raised the procedural question before the Court of Appeals.

The State appealed the decision of the North Carolina Court of Appeals to the North Carolina Supreme Court. Four of the justices adopted the rationale of Judge Hedrick's dissent to reverse the Court of Appeals. Three of the justices, led by Chief Justice Exum, expressed serious doubts about validity of the majority's reasoning and questioned its fairness. Justice Exum wrote:

> Had the trial court summarily dismissed the motion for this procedural default, the ruling would have been correct. But defendant would then have been in a position to reassert his motion with an attached affidavit and to have it heard on the merits.

> As the case stands, the trial court with the state's acquiescence heard the motion and ruled on its merits. No question was raised regarding the lack of a supporting affidavit by either the trial court or the state. Undoubtedly this was be-cause an affidavit would probably have asserted no more, substantively, than the motion itself asserted. The lack of a supporting affidavit was raised for the first time by the state in this Court. Under these circumstances I would hold the *state* waived its right to have the motion summarily dismissed at trial by failing to raise defendant's procedural default at that stage of the proceeding [emphasis added].

Under the majority's holding defendant is forever precluded from having a court properly address the substance of his motion because of a procedural default which could have been cured in the trial court had either the trial court or the state then relied on it. Having not then relied on it, the state should not be permitted to avoid defendant's motion by asserting the procedural default for the first time in this Court. If the shoe were on the other foot, and defendant had failed to object at trial to a similar procedural default on the state's part, the Court, I am satisfied, would have no difficulty holding that defendant had waived his right to object on appeal.

I note, too, that whether a magistrate issuing a search warrant is neutral and detached is an issue more crucial than ever in light of *United States v. Leon*, 468 U.S. 897 [104 S.Ct. 3405, 82 L.Ed.2d 677] (1984). *Leon* holds that evidence seized pursuant to a warrant issued by a "detached and neutral magistrate but ultimately found to be unsupported by probable cause" is admissible under the Fourth Amendment. Gone is the Fourth Amendment's probable cause requirement insofar as it protects a citizen from being convicted on the basis of evidence seized in its absence pursuant to a warrant. Now under the Fourth Amendment when a warrant is required all that stands between the state's ability to search for and seize evidence and use it in court and "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures" is a "detached and neutral magistrate."

*State v. Holloway,* 311 N.C. 573, 579–80, 319 S.E.2d 261 (1984).

\*    \*    \*

■ A federal district court entertaining a *habeas corpus* petition does not sit as a court of appeals over a state supreme court. Its scope of review is extremely narrow. If a defendant has been given a full and fair opportunity to litigate his federal constitutional claims in the state's courts, a federal district court may not second guess the determination by those courts of the constitutional issue. *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

However, in this case the defendant contends that he was *not* afforded a full and fair opportunity by the North Carolina State Courts to litigate his federal constitutional claims. This contention appears to have merit, for when Holloway's constitutional claims *were* considered by the North Carolina Court of Appeals, Holloway prevailed.

The issue in this case is whether a minor and curable procedural error at *trial,* which was not even discovered until much later on appeal, may be taxed against a defendant by an *appellate* court to preclude a defendant from asserting a meritorious constitutional claim.

■ Ordinarily a procedural default precludes *habeas corpus* review by a federal court absent a showing of "cause and prejudice." *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Murray v. Carrier,* —— U.S. ——, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Under this line of cases a procedural error by defendant's counsel—such as failing to object at trial, or failing to raise issues on appeal—may be taxed against the defendant to preserve the state's legitimate interest in the integrity of its judicial procedures. Procedural rules "promote not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions." *Murray v. Carrier, supra,* at ——, 106 S.Ct. at 2647, quoting *Reed v. Ross,* 468 U.S. 1, 10–11, 104 S.Ct. 2901, 2907, 82 L.Ed.2d 1 (1984).

The above line of cases assumes the fundamental fairness of the procedural rule itself. The case before the court presents a very different type of question.

■ The North Carolina rule, under which a motion to suppress wrongfully seized evidence must be filed with an attached affidavit stating the facts upon which that motion is based, is legitimate on its face. The official commentary to N.C. G.S. 15A–977 states that the rule "is structured to produce in as many cases as possible a summary granting or denial of the motion to suppress." The rule as such was intended to facilitate the work of trial courts, expediting decision of motions to suppress and framing the evidentiary questions in the event of a hearing.

The defendant does not challenge the legitimacy of this rule as applied by trial courts. He challenges a special application of the rule by the North Carolina Supreme Court. The rule as applied in this case does not effect a summary disposition of a trial court proceeding. Nor does it help to frame the factual and evidentiary issues. In fact, were such a rule to be applied generally to *all* litigants (and not merely to criminal defendants) there would be no end of appeals by the losing party. As it is, the State, if a losing party, is encouraged to appeal any previously unnoticed technical error by a criminal defendant. As applied in this case by the North Carolina Supreme Court, the rule serves no other purpose than to bar Holloway's otherwise successful assertion of his constitutional rights. This court joins with three North Carolina State Supreme Court justices in questioning the fundamental fairness of such a rule.

As Chief Justice Exum notes in his dissent, the trial court did *not* tax the defendant with the requirement that he file an affidavit with his motion. The record does not show why. Perhaps, as Justice Exum notes, had the trial court insisted on the exact letter of N.C.G.S. 15A–977, it would have been a barren exercise in formalism. The defendant would simply have reproduced the detailed allegations of his motion

in affidavit form. The record shows that the trial court read the motion, found its allegations to be of sufficient merit to require a hearing, and ordered a hearing to address them.

At the hearing, the presence of live witnesses subject to direct and cross-examination eliminated the need for the court to rely on testimony by affidavit. At this time defendant's counsel had no way of knowing that his earlier procedural error would be taxed against his client by an appellate court nearly two years later when it was too late for counsel to correct it. This case does not appear to be one of procedural default but of procedural ambush.

The North Carolina Supreme Court justified its novel and unexpected holding by citing *State v. Maccia*, 311 N.C. 222, 316 S.E.2d 241 (1984) and *State v. Satterfield*, 300 N.C. 621, 268 S.E.2d 510 (1980). In both of these cases the Supreme Court affirmed the rulings of *trial courts* which taxed procedural errors against defendants to bar their claims on the merits. In neither of these cases is there any indication that an *appellate* court would tax against a litigant procedural errors unnoticed at trial.

■ The failure of a litigant to comply with a state procedural rule bars the assertion of federal jurisdiction only when the rule is strictly or regularly followed, and state courts may not avoid deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims. *Hathorn v. Lovorn*, 457 U.S. 255, 263, 102 S.Ct. 2421, 2426–27, 72 L.Ed.2d 824 (1982); *Barr v. City of Columbia*, 378 U.S. 146, 149, 84 S.Ct. 1734, 1736, 12 L.Ed.2d 766 (1964). This court cannot conclude that the North Carolina Supreme Court *consistently* relies upon the procedural rule invoked here.

■ Justice Holmes, sixty-four years ago wrote in *Davis v. Wechsler*, 263 U.S. 22, 24, 44 S.Ct. 13, 14, 68 L.Ed. 143 (1923), "Whatever springes the State may set for those who are endeavoring to assert rights that the State confers, the assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice." *See New York C.R. Co. v. New York & Pennsylvania Co.*, 271 U.S. 124, 126–27, 46 S.Ct. 447, 447–48, 70 L.Ed. 865 (1926) ["if the railroads were too late to argue their case before that court, they are not too late to argue it here"]; *Ward v. Love County*, 253 U.S. 17, 23, 40 S.Ct. 419, 421–22, 64 L.Ed. 751 (1920). A litigant's procedural default in state proceedings does not prevent vindication of his federal rights unless the state's insistence on compliance with its procedural rule serves a *legitimate* state interest. *Henry v. Mississippi*, 379 U.S. 443, 447, 85 S.Ct. 564, 567, 13 L.Ed.2d 408 (1965); *Douglas v. Alabama*, 380 U.S. 415, 422, 85 S.Ct. 1074, 1078–79, 13 L.Ed.2d 934 (1965); *Williams v. Georgia*, 349 U.S. 375, 382–83, 75 S.Ct. 814, 819–20, 99 L.Ed. 1161 (1955). The State has made no showing that the procedural rule as applied in this case serves any interest except to bar an otherwise successful assertion of a federal right. Such a motive is impermissible. *McCoy v. Shaw*, 277 U.S. 302, 303, 48 S.Ct. 519, 519–20, 72 L.Ed. 891 (1928).

■ The trial court should have given Holloway an opportunity to develop his contention that Deputy Clerk Handy did not act as a neutral and detached magistrate. *United States v. Leon*, 468 U.S. 897, 913, 104 S.Ct. 3405, 3415, 82 L.Ed.2d 677 (1984). Holloway should now be given that opportunity.

Holloway's petition is GRANTED.